UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

STEVEN L. CROY,                          )
                                         )
                Plaintiff,               )
                                         )
v.                                       )    CIVIL ACTION NO.
                                         )    5:10-CV-031-BG
                                         )    ECF
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                Defendant.               )

## REPORT and RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Steven L. Croy is appealing the decision to deny his Social

Security disability insurance benefits and supplemental security income by Michael J. Astrue,

Commissioner of Social Security.  The United States District Judge reassigned this case to the

United States Magistrate Judge for all proceedings.  Croy did not consent to the United States

Magistrate Judge exercising the jurisdiction of the District Court.  Pursuant to the order reassigning

this case, the undersigned now files this Report and Recommendation.  The court has considered the

administrative record, the arguments of the parties, and the applicable law and recommends that the

district court affirm the Commissioner's decision and dismiss the complaint.

## Procedural History

In June 2007 Croy filed for disability insurance benefits and supplemental security income

under Titles II and XVI of the Social Security Act.  (Tr. 96-104).  Croy claimed he suffered from

depression, diabetes, degenerative joint disease, hepatitis C, high blood pressure, and gout.  (*Id.* at

12, 53).  The Disability Determination Service denied Croy's application initially and upon

reconsideration.  (*Id.* at 46-53, 62-67).  Croy requested a hearing before an Administrative Law

Judge ("ALJ"). (*Id.* at 68-74, 158). After the hearing, the ALJ determined that Croy was not disabled and therefore not entitled to benefits. (*Id.* at 102-11). Croy requested review by the Appeals Council, which denied his request for review. (*Id.* at 1-3). Accordingly, this court is reviewing the ALJ's decision and denial of benefits.

## Statement of the Case

At a hearing held on October 28, 2008, Croy testified that he was 46 years old. (Tr. at 21). Croy explained that he stopped attending school after the tenth grade but obtained a G.E.D. (*Id.*). He previously worked as a forklift operator, a construction worker, a material handler, and a shipping and receiving clerk. (Tr. 35-36). Upon consideration of the record, the ALJ utilized the five-step sequential evaluation process to find that Croy was not disabled under the Act. (Tr. 11-17). *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v) (2010). The ALJ found that Croy had not engaged in substantial gainful activity since his alleged onset date and that he had medically determinable impairments of degenerative joint disease of the left shoulder, diabetes mellitus, hepatitis C, high blood pressure, and depression. (Tr. 12). The ALJ found that Croy had a severe combination of impairments. (Tr. 12). He also found that Croy's impairments failed to meet or equal a listed impairment for presumptive disability under the regulations. (Tr. 12). *See* 20 C.F.R. §§ 404.1525, 416.925 (2010).

The ALJ found that Croy retained the residual functional capacity[1] ("RFC") to perform light

---

[1]    The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184 (July 2, 1996). "The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." *Id.*

work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010), limited by the need to sit or stand at his option while in the performance of job duties; no climbing; only non-complex job duties; and accommodations for a moderate concentration deficit. (Tr. 13). The ALJ found that Croy was unable to perform his past relevant work. (Tr. 15). Based on consideration of the vocational expert's testimony, the ALJ found that Croy was capable of performing other jobs existing in significant numbers in the national economy and therefore he was not entitled to disability payments. (Tr. 16). The Appeals Council's denial of Croy's request for review rendered the ALJ's decision the Commissioner's final administrative decision for judicial review. (Tr. 1-3, 8-17).

## **Standard of Review**

This court's review of the Commissioner's decision is "limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Moreno v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (quotation omitted). The Supreme Court has defined "substantial evidence" as more than a scintilla and less than a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Id.* "The ALJ's

3

decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Discussion

I.      **Residual Functional Capacity Assessment**

       A.      **Substantial Evidence**

Croy argues that there is inadequate evidence to support the ALJ's RFC determination that he is able to perform light work. The ALJ determined that Croy had an RFC to perform light work, limited by the need to sit or stand, at his option, while in the performance of job duties, with no climbing, non-complex job duties, and a moderate concentration deficit. (Tr. 13).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b) (2010). Substantial evidence exists in the evidence of record to support the ALJ's finding.

In regard to the requirement that the worker be able to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing ten pounds and the possible requirement of pushing and pulling, the evidence of record shows Croy can perform such actions. Dwight D. Hood, M.D., in his consultative examination of Croy, found that Croy did have a limitation of range particularly in his left shoulder, and that his ability to carry out some actions—such as lifting and carrying objects—is "compromised secondary to the problems he has

4

. . . in his shoulders due to pain." (Tr. 187). However, on several occasions Croy stated he was experiencing little to no pain during his medical visits. (Tr. 251, 257, 261, 266). Douglas Wright, M.D., of Lubbock Radiology, found that "there is slight irregularity at the greater tuberosity which can be seen with chronic rotator cuff disease. There is no subluxation of the humeral head or evidence of fracture." (Tr. 188). John Durfor, M.D., a doctor under contract with the state agency to review disability claims found, upon reviewing the medical evidence, that Croy could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds, and he found the same in regard to Croy's ability to push and/or pull. (Tr. 191). Dr. Durfor also found that Croy's "alleged limitations are not wholly supported by [the evidence of record]." (Tr. 195). Although there appears to be conflicting evidence as to Croy's ability to lift/carry and push/pull objects, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). The ALJ's finding in regard to lifting/carrying and pushing/pulling is supported by substantial evidence in the record.

As noted above, light work can require a "good deal of walking or standing." Croy testified at the administrative hearing that he sometimes walks roughly one mile to soup kitchens and also sometimes walks the five- to eight-mile distance to Lubbock Regional Mental Health Mental Retardation Center ("MHMR") for his appointments. (Tr. 24, 26). Further, Dr. Hood stated that Croy "is able to do heel/toe walking, squatting and hopping without much of a problem." (Tr. 187). Also, Croy stated in response to a "Daily Activity" questionnaire that on an average day he

5

rides his bicycle looking for odd jobs to keep busy. (Tr. 128). Dr. Durfor stated that Croy could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday. (Tr. 191). Such evidence shows that Croy can perform the walking/standing requirements of light work. To ensure that Croy's needs were fully accounted for, the ALJ added the further restriction that Croy be able to sit or stand during work at his option. Upon a review of the evidence of record, substantial evidence supports the ALJ's finding that Croy is capable of performing light work with limitations.

Croy claims that the ALJ disregarded Dr. Durfor's finding that Croy has manipulative limitations, namely his ability to reach in all directions. State agency physicians are experts in Social Security disability evaluation, and as such the ALJ must consider their opinion. *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (2010). The ALJ stated in his findings that he considered the doctor's opinion and that he gave it the same weight as that of non-examining physicians and psychologists. (Tr. 15). Croy's claim that the ALJ disregarded Dr. Durfor's finding that Croy has limited reaching abilities is unfounded. Although Dr. Durfor found that Croy had limited reaching abilities, he also found that Croy could perform all of the requirements needed for light work. Accordingly, the ALJ did not disregard Dr. Durfor's finding.

### B.    Impairments and Symptoms Considered

Croy argues that the ALJ failed to consider the effect of certain alleged impairments and symptoms, namely dizziness, fatigue, diabetic neuropathy symptoms, irritability, and pain. He also claims that the ALJ did not consider the combined effect of the aforementioned impairments

6

and symptoms in making his RFC determination.  When an ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process."  20 C.F.R. §§ 404.1523, 416.923 (2010).  The ALJ may discuss each impairment individually and then state that he considered the combined effect of the impairments to satisfy the mandate of 20 C.F.R. § 404.1523, so long as the ALJ considers all of the claimant's impairments and his determination is supported by substantial evidence.  *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

The ALJ began the explanation of his RFC assessment with a statement addressing Croy's claim: "In making this finding I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 13).  The ALJ considered the effect of Croy's impairments and symptoms as required.

The limitations Croy claims the ALJ did not consider are inconsistent with the evidence of record, and therefore the ALJ did not need to incorporate them into his RFC assessment. *See* 20 C.F.R. §§ 404.1529, 416.929 (2010).  Croy cites only one instance in which he complained of dizziness, and the record shows mention of it only one other time.  (Tr. 161, 261).  One instance is not sufficient to establish the existence of a symptom. *See* 20 C.F.R. §§ 404.1528, 416.928 (2010) ("we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence").

The same applies to Croy's alleged diabetic neuropathy symptoms.  Croy cites one

instance in which he complained of such symptoms. (Tr. 256). However, no medical findings appear in the record that establish their existence. During a consultative examination, Dr. Hood stated that Croy "is able to do heel/toe walking, squatting and hopping without much of a problem." (Tr. 187). Croy also testified at the administrative hearing that he walks to soup kitchens that are roughly one mile away and sometimes walks the five- to eight-mile distance to his appointments at MHMR. (Tr. 24, 26). Such evidence is inconsistent with Croy's alleged diabetic neuropathy symptoms. Still, the ALJ, crediting to an extent Croy's testimony that he cannot stand for more than 8-10 minutes because of neuropathy, included a restriction allowing Croy to sit or stand at his option. (Tr. 13).

The medical evidence also does not show "chronic fatigue" to be one of Croy's impairments or symptoms. Dr. Hood noted in his examination note that "patient does complain of problems consistent with extreme fatigue that goes along with his hepatitis." (Tr. 187). Croy complained of feeling fatigued on a few occasions at the Community Health Center of Lubbock. (Tr. 237-38). Croy later told an examining physician that he thought his medication—Wellbutrin—was working well, noting that he had more motivation and energy. (Tr. 247). Taken as a whole, the evidence of record does not show "chronic fatigue" to be one of Croy's limitations.

Irritability is also not supported by the evidence of record. Croy contends that the hypothetical question posed to the vocational expert should have included a limitation for the symptom of irritability, which he claims was repeatedly reported to MHMR. The records show that

Croy mentioned irritability on a few occasions, stating on one occasion that he believed one of his medications was causing irritability. (Tr. 214, 229, 293). At a later visit, however, Croy reported that Lamictal was helping his mood. (Tr. 294). Croy did not mention any issues with irritability at his August 2007 consultative examination. (Tr. 185-87). In addition, Croy testified at the administrative hearing in October 2008 that he has "always been able to get along with most everybody," and that he is a "personable person." (Tr. 34). This evidence does not support Croy's argument that irritability prevents him from working. The ALJ considered mental illness evidence, however, and limited Croy to non-complex jobs and jobs accommodating a moderate concentration deficit. (Tr. 13).

The evidence of record also does not show the existence of disabling pain. The Fifth Circuit Court of Appeals has acknowledged that "mild or moderate pain will not render a plaintiff disabled." *Newton*, 209 F.3d at 459 (citing *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir. 1987)). Thus, the fact that a claimant may experience some pain or discomfort on the job does not compel a finding of disability. *See Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984). In order to be disabling, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Falco*, 27 F.3d at 163)). Croy cites to only one instance in which he complains of shoulder pain. (Tr. 266). The medical records reflect that at many medical visits Croy was experiencing little to no pain. (Tr. 251, 257, 261, 266). The evidence taken as a whole does not support symptoms of shoulder pain that would result in limitations and be a factor in the RFC assessment.

Croy argues that the ALJ erred in making no finding regarding the intensity and persistence of his pain except to wholly find that his testimony was not credible or supported by the objective medical evidence. "[T]he law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco*, 27 F.3d at 163. Once the existence of a medically determinable physical or mental impairment is reasonably established, the ALJ must provide specific findings and reasons concerning the credibility of the claimant's statements about his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (2010). The ALJ's credibility evaluation must be set forth with sufficient specificity, but it need not follow formalistic rules. *See Falco*, 27 F.3d at 163-64 ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.").

The ALJ's decision makes clear why he did not find Croy's testimony credible, including his complaints of pain. As the ALJ stated, "[t]he claimant has been notably non-compliant in taking his [largely free] medications as prescribed and in going to counseling/treatment at [MHMR]." (Tr. 14, 206, 268, 270, 273-74). Further, "the claimant did not even bother to seek any help during the period from January 2006 to March 2007." (Tr. 15). Specifically in regard to pain, the ALJ stated in his discussion of Dr. Hood's consultative medical evaluation that "The claimant said that he has bilateral shoulder pain, as well as low back pain. . . . However, the examination, while productive of subjective complaints of pain (back, hands, etc) did not reveal any objective abnormalities. . . . X-rays of the left shoulder showed no acute problems, although there was a 'slight irregularity' consistent with chronic rotator cuff disease. Certainly nothing that would require

a 'shoulder transplant.'" (Tr. 14). The ALJ explained with sufficient specificity why he did not find Croy's complaints of pain—and testimony in general—to be credible.

Croy argues that the ALJ did not enumerate which of his functional limitations he found to be exaggerated. The ALJ, however, both explained which alleged limitations he believed to be exaggerated and gave reasons for his determinations. (Tr. 13-15). Specifically, the ALJ explained why he did not give credit to Croy's shoulder pain/need for shoulder transplant by discussing Croy's allegations and their inconsistencies with Dr. Hood's findings, as discussed above. (Tr. 14). The ALJ also discussed Dr. Hood's findings in regard to diabetes, stating "The claimant said that he had been diagnosed with diabetes in February 2007, but Dr. Hood did not find any related abnormalities," which encompasses Croy's diabetic neuropathy symptoms. (Tr. 14). Therefore, there was no "omission of the enumeration of the functional limitations which [the ALJ] claims were exaggerated" as Croy contends.

### C.    Social Security Ruling 96-8p

Croy argues that the ALJ did not comply with Social Security Ruling 96-8p. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). Specifically, Croy contends that the ALJ's RFC assessment is "simply conclusory and does not contain any rationale or reference to the supporting evidence as required" and does not contain the required discussion of Croy's functional limitations. As in *Onishea v. Barnhart*, 116 Fed. App'x 1 (5th Cir. 2004), the ALJ based his assessment, in part, on the state examiner's function-by-function analysis of the claimant's exertional limitations. *Id.* at 2. "Thus, the ALJ employed the legal standard set forth in . . . SSR 96-8p in determining [the

plaintiff's] RFC." *Id.*

## II. Weight Accorded to Treating Mental Health Professionals

Croy argues that the ALJ failed to give sufficient weight to his treating psychiatrist and the other mental health professionals he saw at MHMR. Specifically, Croy contends that the ALJ did not give proper weight to the Global Assessment of Functioning[2] ("GAF") scores given to him by his treating psychiatrist, Shiraj Vahora, M.D., and other members of the MHMR staff on multiple visits.

Sections 404.1527(d) and 416.927(d) set out that "[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(d)(2),416.927(d)(2) (2010). The regulation further states, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.*

Controlling weight need not be given where the treating source's opinion is inconsistent with other substantial evidence in the record. *See id.* In fact, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455 (quotation omitted). "The treating physician's opinions are not conclusive" and "may be assigned little or no weight when good cause is shown." *Id.* at 455-56. "Good cause may permit an ALJ to discount the

---

2    A GAF is a numerical score that considers the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text revision, 2000).

weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Here, the ALJ discounted the GAF scores MHMR staff gave Croy for good cause: he found them to be unsupported by the evidence. He noted that the records from MHMR consistently contained GAF scores of 45, "even when [Croy] did not cite any particular problem, mental or otherwise." (Tr. 15). *See Zimmerman v. Astrue*, 288 Fed. App'x 931, 936-37 (5th Cir. 2008) (finding an ALJ's giving lesser weight to a treating physician's report to be supported by the evidence where the GAF score the physician assigned to the plaintiff was inconsistent with his description of the patient and the testimony of a non-examining medical expert). A review of the record shows that MHMR reports consistently indicate GAF scores in the 41-50[3] range. As an example of the inaccuracy of the GAF scores, on September 18, 2007, Croy reported that Wellbutrin was working well for him and that he felt an increase in both motivation and energy and had no suicidal/homicidal ideation. (Tr. 204-05). Despite this positive report, Croy was assessed a GAF score of 46. (*Id.*).

### Recommendation

The district court should find that the Commissioner applied the proper legal standards and that the decision was supported by substantial evidence. Accordingly, the Commissioner's decision

---

3      A GAF in the 41-50 range is described as "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text revision, 2000).

that Croy was not disabled and not entitled to benefits should be affirmed and this case should be dismissed.

## **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:         December 29, 2010.

NANCY M. KOENIG
United States Magistrate Judge